ALSD Local 106 (Rev 07/13) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with cell phone number ███████ and ███████ that are stored at premises controlled by Verizon

)
)
)
)
)
)

Case No. 19-13H-B

Filed Under Seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the      District of      New Jersey     , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1348(2) | Securities and Commodities fraud |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of    days (give exact ending date if more than 30 days:      ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin D. Givhan, FBI Special Agent
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: July 17, 2019

*Judge's signature*

SONJA F. BIVINS

~~Katherine P. Nelson~~, U.S. Magistrate Judge

City and state: Mobile, Alabama      *Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
CELL PHONE NUMBERS ███████;
AND ███████ THAT IS STORED AT
PREMISES CONROLLED BY VERIZON

MJ- 19 - 131 - B

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Justin Daniel Givhan, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Verizon, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921 (the "Provider"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the Provider to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for approximately eight years. I am currently assigned to the Mobile Division, where my duties include investigating violations of federal law to include investigations related to financial and computer crimes. I have investigated multiple cases that have resulted in individuals being convicted of financial crimes, such as bank fraud, wire fraud, and securities fraud. I have also received extensive training on obtaining and reviewing electronic records, including telephonic and e-mail communications. The facts in this affidavit come from my personal observations, my

training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1348(2) (securities and commodities fraud)[1] may have been committed by ███ ███ █ ████ ████████ ██████, ███ █████████ ████ ██ ████ ████████ ██ ████████, and others, in the Southern District of Alabama and elsewhere.[2] There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

5. All dates, amounts, and locations listed below are approximations.

██████████████████████████████████████████████████████

---

[1] The elements of 18 U.S.C. § 1348(2) are: (1) the defendant executed or attempted to execute a scheme or artifice to obtain any money or property by means of false or fraudulent pretenses, representations, or promises which were material; (2) the scheme was in connection with the purchase or sale of any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under the Securities Exchange Act [15 U.S.C. § 78l] or that is required to file reports under the Securities Exchange Act [15 U.S.C. 780(d)]; and (3) the defendant did so knowingly and with intent to defraud.

██████████████████████████████████████████████████████



3



4



5













11





76. On April 2, 2019, I sent a preservation request to Google, Inc., which confirmed receipt of the request the same day. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

77. On April 2, 2019, I sent a preservation request to the AT&T, which confirmed receipt of the request on April 4, 2019. In general, phone records sent to and from a subscriber of AT&T is stored in AT&T's servers.

78. On April 2, 2019, I sent a preservation request to Verizon, which confirmed receipt of the request on April 10, 2019. In general, phone records sent to and from a subscriber of Verizon is stored in Verizon's servers.

79. In my training and experience, I have learned that the Verizon is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages of the Verizon's subscribers may be located on the computers of the Verizon. Further, I am aware that computers located at Verizon contain information and other stored electronic communications belonging to unrelated third parties.

80. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of the Provider for weeks or months.

81. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by the Provider for

14

short periods incident to and following their transmission. In addition, providers occasionally

retain printouts from original storage of text messages for a particular subscriber's account.

82. Wireless phone providers typically retain certain transactional information about the use

of each telephone, voicemail, and text-messaging account on their systems. This information can

include log files and messaging logs showing all activity on the account, such as local and long

distance telephone connection records, records of session times and durations, lists of all

incoming and outgoing telephone numbers or e-mail addresses associated with particular

telephone calls, voicemail messages, and text or multimedia messages. Providers may also have

information about the dates, times, and methods of connecting associated with every

communication in which a particular cellular device was involved.

83. Wireless providers may also retain text messaging logs that include specific information

about text and multimedia messages sent or received from the account, such as the dates and

times of the messages. A provider may also retain information about which cellular handset or

device was associated with the account when the messages were sent or received. The provider

could have this information because each cellular device has one or more unique identifiers

embedded inside it. Depending upon the cellular network and the device, the embedded unique

identifiers for a cellular device could take several different forms, including an Electronic Serial

Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification

Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber

Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a

cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers

to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower

records those identifiers as a matter of course.

84. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

85. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

86. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

87. As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each

element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

88. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require the Provider to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized

persons will review that information to locate the items described in Section II of Attachment B.

89. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Dated July 16, 2019.

Justin Daniel Giyhan
Special Agent
Federal Bureau of Investigation

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS 17th
DAY OF JULY 2019

~~KATHERINE P. NELSON~~   SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

18

# ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with telephone number ███████ and telephone number ███████ that is stored at premises owned, maintained, controlled, or operated by Verizon, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Verizon (the "Provider")**

To the extent that the information described in Attachment A is within the possession,

custody, or control of the Provider, regardless of whether such information is located within or

outside of the United States, and including any messages, records, files, logs, or information that

have been deleted but are still available to the Provider or have been preserved pursuant to a

request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following

information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from August 2015 to August 31,

2018 stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described

above;

c.      All transactional information of all activity of the telephones and/or voicemail

accounts described above, including log files, messaging logs, local and long distance telephone

connection records, records of session times and durations, dates and times of connecting,

methods of connecting, telephone numbers associated with outgoing and incoming calls, cell

towers used, and/or locations used from August 2015 to August 31, 2018;

d.      All text messaging logs, including date and time of messages, and identification

numbers associated with the handsets sending and receiving the message from August 2015 to

August 31, 2018;

e.      All business records and subscriber information, in any form kept, pertaining to

the individual accounts and/or identifiers described above, including subscribers' full names,

addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

     f.     Detailed billing records, showing all billable calls including outgoing digits, from August 2015 to August 31, 2018;

     g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from August 2015 to August 31, 2018;

     h.     Incoming and outgoing telephone numbers, from August 2015 to August 31, 2018;

     i.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

     j.     All records pertaining to communications between the Provider and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1348(2) involving ██ ██ ██ ████████ ███████████ ███ ██ ██ ██ ████ ██████ from August 2015

2

to August 31, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

███████████████████████████████████████████████

      (b)     Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

      (c)     Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

      (d)     Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

      (e)     The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

      (f)     The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to securities fraud, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support

staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.